|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | |
|---|---|
| Ronnie Edwards,<br><br>　　　Plaintiff<br><br>v.<br><br>Clark County, et al.,<br><br>　　　Defendants | 2:13-cv-01316-JAD-CWH<br><br>**Order Granting Defendants' Motions for Summary Judgment and Plaintiff's Motion to Semi-Combine Exhibits and Denying Plaintiff's Motion for Leave to Amend and Motion for Leave to file a Surreply**<br><br>**[ECF 115, 117, 140, 145, 154]** |

　　　Pro se prisoner Ronnie Edwards sues Clark County Detention Center (CCDC) correctional officers and medical care staff under 42 USC §1983 for injuries he sustained when he slipped and fell on a puddle while awaiting trial at CCDC.[1]  Edwards claims that Officers Hightower and Reyes were deliberately indifferent to serious risks to his safety, and that Officers Reyes and Scott, along with Dr. Raymond Mondora and Nurse Katrina Simeon, were deliberately indifferent to his serious medical needs, all in violation of the Eighth and Fourteenth Amendments.[2]

　　　Defendants move for summary judgment on all four of Edwards's claims,[3] and Edwards seeks leave to file an amended complaint.[4]  Because Edwards has not shown good cause and amendment would be futile, I deny his motion for leave to amend and address defendants' summary-judgment motions.  I find that Edwards lacks evidence to show that defendants were deliberately indifferent to his safety or serious medical needs, so I grant defendants' motions for summary

---

[1] ECF 7.

[2] Edwards also sued Clark County, Sheriff Gillespie, CCDC's contract medical provider Naphcare, and several John Doe defendants.  I dismissed Edwards's claims against these defendants with prejudice when I screened Edwards's complaint.  ECF 6 at 9.

[3] ECF 115 (motion for summary judgment by Dr. Mondora and Nurse Simeon); ECF 117 (motion for summary judgment by officers Hightower, Reyes, and Scott).

[4] ECF 145.

judgment, enter judgment in their favor and against Edwards, and close this case.[5]

## Background

In May 2013, Edwards was arrested for battery constituting domestic violence and booked at the CCDC.[6] Edwards remained there until he was sentenced to 60–150 months in prison[7] in January 2014 and transferred to the custody of the Nevada Department of Corrections.[8] He currently resides at Nevada's High Desert State Prison.

**A.    The June 8, 2013, incident**

On the evening of June 8, 2013, Edwards exited his lower-tier cell and proceeded upstairs to take a shower.[9] Edwards reached the top of the stair case, walked about two feet, and then slipped on a puddle of water and fell to the floor.[10] Edwards testified at his deposition that he believes the water forming the puddle leaked from a nearby plumbing closet,[11] and that he had noticed a puddle in that spot nearly every day since his arrival the previous month.[12] Edwards had reported the leak to defendants Hightower and Reyes;[13] both officers assured him that maintenance would take care of it.[14] Work orders dated June 2nd at 5:31 p.m. and June 8th at 10:45 a.m.[15] show that maintenance

---

[5] I find this motion suitable for disposition without oral argument. L.R. 78-2.

[6] ECF 115-1 at 2.

[7] ECF 115-3.

[8] ECF 115-3 at 116:7–12.

[9] ECF 115-4 at 18:1–19:12, 40:4–18.

[10] *Id.* at 22:18–22, 28:3–1, 29:7–14.

[11] ECF 115-4 at 30:16–22.

[12] *Id.* at 32:20–23.

[13] *Id.* at 40:19–25, 41:3–7.

[14] *Id.* at 43:23–44:1.

[15] ECF 118 at 61–62.

personnel inspected the area but that there was no evidence of a leak.[16]

Immediately after Edwards fell, a "Code 99" was called and defendant Nurse Simeon and Physician's Assistant Henry responded.[17] Edwards reported lower-back and head pain and ringing in his ears; he denied losing consciousness, nausea, or vomiting.[18] Nurse Simeon's report was negative for any serious injury, and she noted that there was no redness or swelling.[19] P.A. Henry prescribed muscle relaxers, pain killers, and a cool compress.[20]

Once Edwards returned to his cell, he kited medical, complaining that he had a large bump on the back of his head[21] and that his pinky finger was swollen.[22] Edwards also reported that he had just vomited and that he was hearing ringing in his ears and seeing flashes of light.[23] Nurse Yadao promptly responded, took Edwards's vital signs, and notified Nurse Simeon of her findings.[24] Nurse Simeon checked on Edwards a few hours later and observed a 3 x 3 cm swelling on the back of his head.[25] She gave Edwards his medications and noted that he had a sick call scheduled for the following day.[26]

---

[16] *Id.*

[17] ECF 115-4 at 50:6–9, 135. Nurse Simeon and P.A. Henry were both employed by Naphcare, a government contractor that provides healthcare for inmates at the CCDC.

[18] *Id.* at 50:20–22, 135.

[19] *Id.* Her report also indicates that Edwards had active range of motion on all extremities, his breathing was even, and that he was able to walk down the stairs without assistance.

[20] *Id.* at 147.

[21] *Id.* at 59:10–15; ECF 115-6 at 62.

[22] ECF 115-6 at 62.

[23] *Id.*

[24] ECF 115-5 at 36.

[25] ECF 115-11 at ¶ 4.

[26] *Id.*

Defendant Dr. Mondora evaluated Edwards on June 10, 2013.[27] Edwards claims that he asked Dr. Mondora to order him moved to a bottom bunk, and that Dr. Mondora responded that he would look into it.[28] Edwards also claims that Dr. Mondora accused him of "faking" his injuries.[29] Dr. Mondora denies these allegations, and his notes do not mention a bottom-bunk request.[30] Dr. Mondora's physical examination was negative: he observed "no signs or physical findings of any nature to indicate any injuries to head, neck, or back," but noted that Edwards's right pinky was possibly strained.[31] Dr. Mondora ordered x-rays of Edwards's right hand and spine,[32] which were taken the next day. The radiology reports indicate that Edwards had soft tissue swelling in his right hand and a muscle spasm in his back.[33]

Edwards testified that some time between June 10–13, he spoke to Officers Reyes and Scott about moving to a lower bunk.[34] Both officers told him that they lacked authority to move him, and that he would need to go through the classification department for a bunk reassignment.[35]

**B.     The June 13, 2013, "black out"**

On the evening of June 13, 2013, Nurse Simeon responded to a medical call for a purported "black out."[36] Edwards reported that he was brushing his teeth and, the next thing he knew, he was

---

[27] Dr. Mondora is the Medical Director for Naphcare at the CCDC. ECF 115-14 at ¶ 1.

[28] ECF 118 at 62:5–9.

[29] *Id.* at 61:21–25; ECF 115-6 at 67–69.

[30] ECF 115-114 at 3, ¶ 4.

[31] ECF 115-5 at 134.

[32] *Id.* Edwards insisted that his head be x-rayed too; Dr. Mondora declined, stating that he did not want to expose Edwards to unnecessary radiation. ECF 115-4 at 62:13–17.

[33] *Id.* at 74–75.

[34] ECF 118 at 41, 81:2–7.

[35] *See id.* at 42–43.

[36] ECF 115-5 at 133–34.

sitting on the floor.[37] He also reported that he had a headache and that his ears were ringing.[38] Nurse Simeon physically examined Edwards and reported her assessment to P.A. Henry, who examined Edwards about an hour later. According to P.A. Henry's notes, Edwards told him he hit his face on the sink, and that he had been suffering from episodes of vomiting, blacking out, and ringing in his ears since the June 9, 2013, slip.[39] P.A. Henry assessed that Edwards was possibly suffering from "post concussion syndrome" and recommended that he be scheduled for a follow up.[40] P.A. Henry entered an order for Edwards to be transferred to a lower bunk and prescribed pain medication and muscle relaxers.[41]

On the evening of June 16, 2013, Edwards kited medical, complaining that he was dizzy and unable to walk.[42] He also reported that had bruising on his right lower eyelid and a bubble on his right eye.[43] The responding nurse noted that Edwards was alert and oriented, had a steady gait, was not in any acute distress and had no bubble in his right eye despite his reports. Despite these negative findings, Edwards was again referred for a sick call.[44]

**C.   The June 18, 2013, fall and first admission to University Medical Center**

Two days later, on June 18, 2013, Edwards submitted three grievances complaining about his continuing symptoms and claiming that Dr. Mondora refused to see him at his scheduled sick call appointment earlier that day.[45] Dr. Mondora maintains that he was not scheduled to see Edwards on

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 133.

[40] *Id.*

[41] *Id.* at 147, 174–75.

[42] ECF 115-5 at 131–33.

[43] *Id.* at 131.

[44] *Id.* at 132.

[45] ECF 115-6 at 83–87.

the 16th, and this is consistent with the appointment logs.[46]

At around 11:00 p.m. that evening, Edwards was getting off his top bunk to use the restroom when he allegedly stepped onto a stool and fell to the floor.[47] Edwards testified that, when he regained consciousness, he had head, neck, and back pain.[48] A "Code 99" was called.[49] Edwards was examined at the jail and given an injection of Toradol (for nausea) and an IV of saline (for hydration).[50] Edwards was then transported to University Medical Center (UMC) for further evaluation.[51]

Edwards was admitted to UMC in the early morning hours of June 19, 2013. He received CTs of his cervical spine and brain, chest x-rays, an ultrasound of his testicles, scrotum, and carotid artery, and an echocardiogram; all tests were negative for injury.[52] Edwards was discharged from UMC the next day, and hyptertension and pain medications and muscle relaxers were recommended.[53] P.A. Henry prescribed—and Edwards received—these medications when he returned to the CCDC later that day,[54] and Dr. Mondora ordered Edwards a lower-bunk assignment.[55]

**D.  June 24, 2013, fall and second admission to University Medical Center**

On June 24th, Edwards kited medical, requesting to see a doctor and to be moved to a lower

---

[46] *Compare* ECF 115-13 at 11–12 (Naphcare appointment log) and ECF 115-14 at ¶ 7 (Mondora declaration) *with* ECF 118 at 35–36 (Edwards deposition) and ECF 115-6 at 83–87 (grievances).

[47] ECF 118 at 38, 74:1–6.

[48] *Id.* at 39, 77:16–18.

[49] *Id.* at 77:18–20.

[50] ECF 115-6 at 88–91.

[51] *Id.* at 90.

[52] ECF 115-15 at 3–8.

[53] *Id.* at 11–12.

[54] ECF 115-5 at 146, 171–74.

[55] ECF 115-14 at ¶ 8.

bunk.[56]  The responding nurse submitted a transfer-request form, which noted that Edwards was to be moved to a lower bunk per Dr. Mondora's June 21, 2013, order.[57]  Later that evening, a third "Code 99" was called after Edwards allegedly fell while getting down off the top bunk.[58]  Edwards was again transported to UMC for evaluation.[59]  Though Edwards's physical examination was normal, the UMC provider placed Edwards under observation and ordered EEG and CT scans; each produced normal results.[60]  Edwards was discharged from UMC two days later with a diagnosis of syncope (fainting) secondary to orthostatic (blood pressure) changes, neck strain, hypertension (high blood pressure), and tinnitus (ringing in the ear).[61]  Once Edwards returned to CCDC, Dr. Mondora prescribed medications for dizziness, high blood pressure, and pain and prescribed muscle relaxers.[62]

### E.   Edwards's claims

After screening,[63] Edwards has four claims and seeks compensatory and punitive damages.[64]  In count one, Edwards alleges that Officers Hightower and Reyes were deliberately indifferent to his safety for the leaking pipe and slippery conditions it caused by the shower area.  Count two is an official-capacity claim against Dr. Mondora as the director of Naphcare.[65]  In counts three and four, Edwards alleges that Dr. Mondora and Nurse Simeon, along with Officers Hightower, Reyes, and Scott, were deliberately indifferent to his serious medical needs stemming from the fall.  Dr.

---

[56] ECF 115-7 at 22.

[57] *Id.* at 23.

[58] ECF 115-5 at 132.

[59] *Id.*

[60] ECF 115-15 at 13–19.

[61] *Id.* at 20.

[62] ECF 115-14 at ¶ 9.

[63] ECF 6.

[64] ECF 7 at 8, 12, 17, 24, 27.

[65] *Id.* at 12.

Mondora and Simeon (Naphcare defendants) and Officers Hightower, Reyes, and Scott (officer defendants) move separately for summary judgment.

## Discussion

### I. Defendants' Motions for Summary Judgment [ECF 115, 117]

#### A. Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[66] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[67] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[68]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[69] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[70] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[71]

---

[66] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[67] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[68] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[69] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[70] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[71] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

1 **B.    Deliberate indifference to Edwards's safety**

2  Because Edwards was a pretrial detainee when the alleged deliberate indifference to his safety occurred, his claim is governed by the Fourteenth Amendment.[72] To prevail, he must show that prison officials were deliberately indifferent to his safety by subjecting him to a substantial risk of serious harm.[73] Deliberate indifference requires showing that "the official[s] [knew] of and disregard[ed] an excessive risk to [that inmate's] safety."[74] Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[75]

**C.    The officer defendants are entitled to summary judgment on Edwards's deliberate-indifference-to-safety claim because Edwards lacks evidence to show that a dangerous condition existed and that the officers were deliberately indifferent.**

The officer defendants argue that Edwards lacks evidence to show that they were deliberately indifferent to his safety. Edwards responds that the officer defendants were deliberately indifferent to a serious risk to his safety because they knew about the water leak and failed to fix it or mark the area.[76]

The leaky-pipe/slippery-floor situation that Edwards experienced simply does not qualify as a serious safety risk in the Ninth Circuit. In *Jackson v. State of Arizona*, the Ninth Circuit held that slippery prison floors "do not even state an arguable claim for cruel and unusual punishment"

---

[72] *Gibson v. Cty of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (explaining that pretrial detainees' rights derive from the due-process clause rather than the Eighth Amendment's protection against cruel and unusual punishment).

[73] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Redman v. Cty of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991) (explaining that, because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, courts apply the same standard).

[74] *Id.* at 837.

[75] *Id.*

[76] ECF 142 at 6.

because the Constitution does not mandate comfortable prisons.[77] In *LeMaire v. Maass*, the Ninth Circuit applied *Jackson* and held that even "shackling a dangerous inmate in a shower" does not create a "sufficiently unsafe condition[,] even if the floors to the shower are slippery and [he] might fall while showering. . . ."[78]

The Ninth Circuit further fleshed out the law in this area when it held in *Frost v. Agnos* that an inmate in a long-leg cast who was required to use crutches had at least stated a claim for deliberate indifference when prison officials refused to provide him with an accessible shower, despite his repeated requests and the officers' knowledge that he had already fallen and injured himself several times.[79] The court reasoned that "Frost's repeated injuries and the unsafe conditions that follow from the use of crutches," distinguished his case from the slippery floors in *LeMaire* and *Jackson*.[80]

These cases suggest that a constitutional claim may lie when an otherwise relatively minor safety hazard is exacerbated by other conditions, and those conditions combine to pose a sufficiently serious risk of harm to the inmate's safety.[81] But unlike Frost, Edwards has not alleged that another condition exacerbated the hazard of the slippery floor or hampered his ability to reduce the risk of injury should he fall. And, though Edwards allegedly reported the puddle to the officers, there is no evidence that—like Frost—Edwards had previously fallen and injured himself. In fact, Edwards was apparently aware of the puddle problem for several weeks before he fell and had safely negotiated

---

[77] *Jackson v. State of Ariz.*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citation omitted).

[78] *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993).

[79] *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1989).

[80] *Id.*

[81] *See e.g. Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (holding that safety hazard posed by malfunctioning oven door, exacerbated by the prison's inadequate lighting, seriously threatened inmate safety); *Frost*, 152 F.3d at 1129; *Anderson v. Towne*, Case No. CV 08-2480 CTB, 2010 WL 455387, at * 4 (E.D. Cal. Jan. 29, 2010) (finding that prisoner stated a claim for deliberate indifference where dangerousness of broken tile floors was exacerbated by prisoner's limited mobility and weakness in his hands).

this hazard on numerous occasions, making it less likely that the puddle posed a serious danger to him.[82] Edwards's claim that the puddle by the showers—by itself—constituted a sufficiently unsafe condition to warrant constitutional relief thus fails as a matter of law, and the officer defendants are entitled to summary judgment on claim one.

### D. Deliberate indifference to Edwards's serious medical needs

Like safety-based deliberate-indifference claims, deliberate-indifference-to-serious-medical-needs claims brought by pretrial detainees are governed by the due-process clause of the Fourteenth Amendment.[83] To prevail, Edwards must show that defendants acted with "deliberate indifference" to his serious medical needs[84] by satisfying "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[85]

To satisfy the first prong, Edwards "must show a serious medical need by demonstrating that failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain."[86] To satisfy the deliberate[-]indifference prong, Edwards must show "(a) a purposeful act or failure to respond to his pain or possible medical need and (b) harm caused by the indifference."[87] "Indifference may appear when prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide

---

[82] *See Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004) (distinguishing *Frost* and rejecting unsafe-conditions claim brought by prisoner on crutches where the evidence showed that the prisoner was aware of the standing-water problem for seven weeks before he fell and that he had safely entered and exited the shower area on crutches on numerous occasions before his fall).

[83] *Gibson*, 290 F.3d at 1187.

[84] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Gibson*, 290 F.3d at 1187 (applying Eighth Amendment deliberate-indifference standard to medical-needs claim brought by pretrial detainee under the Fourteenth Amendment).

[85] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

[86] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[87] *Id*. (internal quotations omitted).

medical care."[88]

### E. The officer defendants are entitled to summary judgment on Edwards's medical-needs claims (claims three and four).

The officer defendants argue that they are entitled to summary judgment on Edwards's medical-needs claims because (1) they were entitled to reasonably rely on prison medical staff to provide appropriate medical care and (2) informing Edwards that they did not have authority to move him to a different bunk does not constitute cruel and unusual punishment or deliberate indifference.[89] Edwards responds that the officer defendants were deliberately indifferent to his serious medical needs because they failed to reassign him to a lower bunk and failed to take "reasonable measures to abate his pain."[90]

The officer defendants are correct that, as correctional officers, they are entitled to reasonably rely on the expertise of the prison's medical staff.[91] The officers thus had no obligation to provide Edwards with any further medical treatment, or to themselves request that he be moved to a lower bunk based on his medical needs. In short, the officers cannot be liable for failing to affirmatively treat Edwards because he was already being treated by prison medical staff. There is also no evidence that the officers denied, delayed, or intentionally interfered with Edwards's medical treatment, so they cannot be held liable on that basis.

Failing to reassign Edwards to a lower bunk also does not give rise to liability for cruel and unusual punishment because there is no evidence that the officers were aware of—and disregarded—a serious risk of harm to Edwards. Edwards's unsubstantiated requests to Officers Reyes and Scott in the days following his first fall came *before* Edwards's two alleged falls from the

---

[88] *Id*. (internal quotations omitted).

[89] ECF 117 at 10.

[90] ECF 142 at 11, 25.

[91] *Lemire v. Cal. Dept. of Corr. and Rehab.*, 726 F.3d 1062, 1084 (9th Cir. 2013) (*citing Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006)).

top bunk.[92]  Thus, even if the top bunk did increase Edwards's risk of falling (which is disputed) there is no evidence that these officers consciously disregarded that risk.

Because Officers Hightower, Reyes, and Scott were entitled to reasonably rely on the CCDC's medical staff, and Edwards lacks evidence to show that the officers delayed or otherwise intentionally interfered with his treatment, the officer defendants are entitled to summary judgment on Edwards's deliberate-indifference-to-serious-medical-needs claims (claims three and four).

### F.  The Naphcare defendants are also entitled to summary judgment on Edwards's medical-needs claims (claims two–four).

Nurse Simeon and Dr. Mondora also move for summary judgment, arguing that Edwards lacks evidence to show that he had a serious medical need giving rise to constitutional protection, and that, even if Edwards could show a serious medical need, he lacks evidence to show that they were deliberately indifferent to it.[93]

Edwards responds that whether he had a serious medical need and whether defendants were deliberately indifferent is genuinely disputed.  He contends that his numerous medical kites and complaints and his medical records show that he had a serious medical need.[94]

When a prisoner bases his deliberate-indifference claim on the failure to provide medical treatment, he must also show that defendants "were (a) subjectively aware of the serious medical need and (b) failed to adequately respond."[95]  Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[96]  A mere difference of medical opinion likewise

---

[92] ECF 118 at 41, 81:2–7 (Edwards testifying that he asked Officers Reyes and Scott to move him to a lower bunk some time between June 10th and 13th).

[93] ECF 115 at 18–20.

[94] ECF 141 at 21.

[95] *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2009) (vacated and remanded on other grounds by 131 S.Ct. 1812).

[96] *Id.* at 1081–82 (internal citations and quotations omitted).

does not suffice;[97] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[98]

The record shows that Dr. Mondora and Nurse Simeon were consistently responsive to Edwards's medical needs. Both Dr. Mondora and Nurse Simeon's examinations of Edwards—as well as tests performed by other medical providers both at the jail and the hospital—consistently returned negative results.[99] The only conditions discovered during the extensive testing that Edwards received was soft-tissue swelling in his right hand,[100] muscle spasm,[101] and high blood pressure,[102] and Edwards was consistently prescribed—and received—treatment for these ailments, including muscle relaxers and pain, anti-nausea, and high-blood-pressure medication.[103] There is no evidence that these defendants were subjectively aware of any serious medical need and failed to adequately respond. Edwards also has produced no evidence to show that the treatment he received was medically unacceptable under the circumstances, or that it was taken in conscious disregard for his health. Deliberate indifference is a high standard; Edwards's assertions amount to, at most, state-law negligence claims, which are not actionable under § 1983. Nurse Simeon and Dr. Mondora are entitled to summary judgment on Edwards's medical-needs claims (claims three and four).

Finally, Edwards's official-capacity claim against Dr. Mondora as the head of Naphcare fails as a matter of law because Edwards has not shown any underlying constitutional deprivation, let alone that any deprivation was attributable to Dr. Mondora. Accordingly, Dr. Mondora is entitled to summary judgment on claim two.

---

[97] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[98] *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

[99] ECF 115-5 at 134; ECF 115-15 at 3–8, 13–19.

[100] ECF 115-5 at 74–75.

[101] *Id.*

[102] ECF 115-15 at 3–8.

[103] ECF 115-5 at 146, 171–74; ECF 115-14 at ¶ 9; ECF 115-6 at 88–91.

## II. Remaining Motions

### A. Edwards's motion for leave to amend is denied because amendment would be futile.

Almost three months after defendants filed their motions for summary judgment and one month after I denied his previous motion to amend,[104] Edwards filed his fourth motion for leave to amend his complaint.[105] Edwards seeks to replace some of the defendants previously identified as John Doe defendants with their real names. Edwards seeks to add Officer Mitchell, who was allegedly the officer who called the "Code 99" after Edwards's June 8, 2013, fall,[106] CCDC maintenance worker Douglass Budd, and Sergeant Robert Burleson.[107] Edwards also seeks to add Melody Molarino, the Health Services Administrator of CCDC,[108] and the Las Vegas Metropolitan Police Department (LVMPD)[109] in their individual and official capacities.

Edwards's motion for leave to amend is denied for two reasons. First, Edwards's request is six months late. The deadline to seek amendment was March 30, 2015.[110] Although the liberal amendment standard of Rule 15 applies to timely motions to amend, when a party seeks leave to amend after the deadline for amendment has expired, he must also show good cause to reopen and extend the deadline.[111] Edwards has not shown good cause to extend the deadline for amendment. I denied Edwards's third motion for leave to amend because his proposed amended complaint contained claims and parties that had already been dismissed with prejudice, and because Edwards

---

[104] ECF 136.

[105] ECF 145.

[106] *Id.* at 6.

[107] *Id.* at 7.

[108] *Id.*

[109] *Id.* at 17.

[110] ECF 96 at 2.

[111] *See* ECF 136 at 3, n. 17.

failed to show good cause for seeking amendment after the deadline.[112]  I instructed Edwards that, if he filed another motion to amend, he would need to show that he was diligent in seeking amendment after the deadline.[113]

Even accepting Edwards's assertions that he did not learn the identities of these defendants until March or April 2015 and taking into account that his third motion to amend was pending until August 2015, I find that Edwards has not shown good cause.  Edwards does not even attempt to explain why he waited 39 days after I denied his third motion for leave to amend to file the instant motion, and allowing amendment at this late stage in the litigation would unfairly prejudice the defendants because these events occurred nearly three nears ago.

Second, even if Edwards had demonstrated good cause, his request would be denied because his proposed amendments would be futile.  Edwards's proposed amended complaint contains Nevada statutory and negligence claims that are not actionable under § 1983.  Edwards's claims against the LVMPD fail because Edwards has not sufficiently alleged facts to state a plausible municipal-liability claim.[114]  Edwards's claims against Melody Molarino likewise fail because he has not alleged facts to state a plausible claim for supervisory liability.[115]  Edwards's claims against maintenance worker Douglass Budd fail because the leaky-pipe situation is not sufficiently dangerous to support a deliberate-indifference-to-safety claim.  And Edwards has not pleaded any facts to show that Officer Mitchell or Sergeant Robert Burleson were deliberately indifferent to his safety or serious medical needs; so these claims also fail.

Because Edwards has not demonstrated good cause for seeking leave to amend past the

---

[112] ECF 136 at 2.

[113] *Id.* at 3.

[114] *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (holding that a municipal entity can only be found liable under § 1983 when its policy, practice, or custom inflicts the constitutional injury).

[115] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability for § 1983 actions; a supervisor is liable for the constitutional violations of her subordinates only if she participated in or directed the violations or knew of them and failed to act to prevent them).

deadline and because his proposed amendments are futile, his fourth motion for leave to file an amended complaint is denied.

**B.     Motion for leave to file surreply/motion to strike and motion to "semi-combine exhibits" [ECF 140, 154]**

Edwards moves to strike defendants' replies in support of their motions for summary judgment, arguing that they are untimely.[116]  Edwards is incorrect.  Defendants' replies were due on October 11, 2015, a Sunday.  Monday October 12, 2015, was Columbus Day, a court holiday.  Federal Rule of Civil Procedure 6(a)(1)(C) states that when a deadline falls on a weekend, the deadline moves to "the next day that is not a Saturday, Sunday, or legal holiday."  Defendants thus timely filed their replies on October 13, 2015, so Edwards's motion to strike them is denied.

Edwards also moves for leave to file a surreply.  He conclusorily argues that defendants raised new arguments in their replies, but he does not identify what these new arguments are or on what pages they can be found.[117]  Because Edwards has not identified any new arguments raised by defendants in their replies that would justify granting leave to file a surreply—and because I have discovered none—his request is denied.

Finally, Edwards filed a motion to "semi-combine exhibits," requesting that I consider the exhibits attached to his opposition[118] to the Naphcare defendants' motion for summary judgment in support of both oppositions.[119]  Edwards's request is granted, and I fully considered his exhibits in support of both oppositions.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motions for summary judgment **[ECF 115, 117] are**

---

[116] ECF 154 at 2.

[117] *Id.*

[118] ECF 115.

[119] ECF 140.

**GRANTED.  Summary judgment is granted in favor of the defendants and against the plaintiff on all claims.**

IT IS FURTHER ORDERED that plaintiff's motion to semi-combine exhibits **[ECF 140] is GRANTED;** and plaintiff's motion for leave to file an amended complaint **[ECF 145]** and motion for leave to file a surreply/motion to strike **[ECF 154] are DENIED.**

The Clerk of the Court is instructed to enter judgment for defendants and against plaintiff and **CLOSE THIS CASE.**

Dated this 2nd day of March, 2016.

_____
Jennifer A. Dorsey
United States District Judge